All right, here ye, here ye, here ye, this Honorable Appellate Court of the 2nd District is back in session, pursuant to adjournment. The Honorable Susan A. Hutchinson presiding. Please be seated. Your Honor, the second case this morning calls for equal versus LeBron v. Miller on behalf of the Avalon, Mr. Christopher McCoy. On behalf of the people, Mr. Matthew J. Schmidt. All right, Mr. McCoy, are you ready? May it please the Court, Counsel. My name is Christopher McCoy from the Office of the State Appellate Defender and I represent Ms. Rhonda Miller. Today I'd like to begin by focusing on the first issue regarding the Fourth Amendment issue. Mr. McCoy, I have a little bit of a cold and it's affecting my hearing. Could you speak up a little bit? Sure. Mr. Kirkham pushed it and you're pushing it too. In this case, the Fourth Amendment violation occurred when the vehicle was initially pulled over. It's at that point when Ms. Miller is first seized and it's at that point when the officers needed reasonable suspicion to justify this seizure. Anything they observed afterwards or anything Roger Jordan told them afterwards is simply not relevant to the inquiry in this case. When does this issue of the reliability of the tip become an issue? And what do we look at to determine that there is reliability? Well, whether or not a tip can support reasonable suspicion is, we use a totality of the circumstances test. And there's three factors, veracity, reliability, and basis of knowledge. Now, the trial court in this case said that just because it's a citizen informant, there's no need to show prior reliability or any independent corroboration. However, that's not the law. This court, in cases such as People v. Nitz and People v. Lindley, have held that even an identified informant must be corroborated with more than just simply innocent details. So I guess to answer your question, it's a totality of the circumstances test. And really, in every case, we need to examine reliability. So here, the first thing affecting reliability is that really we should not think of this tipster as an identified informant. Now, it's true he does give his name during the tip. However, when the officers stopped the vehicle, they had no way of knowing that he was who he said he was. They had no idea that Roger Jordan was the one who actually made this call. It was not a 911 call. There's no evidence it was traced. There's no evidence it was traced to a phone that could be linked to Roger Jordan. So, again, there's no way to know that he was the one who made this call. Just as we don't assume that the substance of the tip is true, we can't simply assume that the name given is accurate either. Well, he identified his route. He identified his proximate arrival time. He identified the fact that his car had a problem that would be pretty easily identifiable, although I think it was daytime, which was kind of strange. But, you know, if you want to run with running lights, you can, and if one of them is out. Everything he said about who or what he was and where he was and how he could be identified was accurate, correct? That is correct. But those are simply mere innocent details. Those are not details pointing towards any type of illegal activity. And in the cases such as – But the more specificity there is, the better, correct? Correct, but you still need something beyond the innocent details. In his phone call, did he identify that – well, he said, I just picked up a lady. I don't know that he knew her name at that time. Maybe he knew a first name or a last name. And she just – or I'm bringing a lady, and she just picked up some crack. Now, what more do we need? Oh, and then I've been talking to the other officer. I think it was Officer Haas about it. Yes. Well, I guess I would point to the case of People v. Sparse, which is a fairly similar situation. The informant identified the make and model of the car. They identified the occupants, the race and relative age of the occupants. And they identified when and sort of what time they would be passing – it was Springfield in that case – but what time they would be passing through Springfield. And the 4th District there held that that was not enough to support a reasonable suspicion. That was simply innocent details, which did not amount to reasonable suspicion. And Sparks was – he had pending charges, correct? Yes, he did. That would be a difference between the two individuals, correct? Well, another difference between the two individuals is that they actually knew this source in Sparks. They'd worked with him before. Here, Officer Hilby – or Hilsby, I can't remember how to pronounce it – but she had not worked with Jordan before. What he knew of Jordan is that his history was giving tips that were not successful. He gave tips that did not lead to arrests, did not lead to any kind of evidence of illegal activity. Instead, these tips were all aimed at one person, Rhonda Miller. So really, even if they could assume this was Roger Jordan, it looks more like a person just with a grudge, for whatever reason, against Mr. Miller as opposed to a reliable source. And the state also points out basis of knowledge, which is the third prong of the totality to circumstances test. And if you look at the actual tip itself – and again, I go back to the point that what they learned from Jordan afterwards is really not relevant here. But you look at the tip itself, and the basis of knowledge really isn't as strong as it might appear at first glance. He says that he cannot talk because the defendant is, quote, going to be in the car. Well, so clearly they're not together when this occurred. We don't know where he is. We don't know where she is. Eventually, though, he essentially pulls over. He agrees to be stopped. Yes. I mean, so where's the seizure if the person who's operating the vehicle agrees to be pulled over? Where's the seizure? The passenger is also seized when there's a traffic violation. In Ms. Miller's eyes, this looks exactly like a traffic stop. A cop car turns on its lights, pulls to the side of the road, the police officer pulls right behind them. He can't consent to her being seized. He has no authority over her person. And clearly we see that she's not free to leave at any time during this stop. So, you know, I agree, it's not a typical case. But still. So it is okay for him, though, to pull over at any point in time, whether she disagrees with that decision or not. He's driving the vehicle, he's in control of the vehicle, he decides to pull over. But there's not that police show of authority that we have here. As a citizen making a decision, he calls and says, I want to be stopped, essentially. But he can't say, I want you to arrest her. I mean, which is essentially what he's doing, but he doesn't have authority. He agrees to it, and then he consents to a search of the vehicle, which leads to the discovery of information. Results in an arrest. Well, in terms of the search of the vehicle, at that point. I mean, isn't it really, when you look at this, it's like any typical confidential informant interaction. Where a CI says, I'm going to be at such and such a location at such and such a time. And there's a ruse that's played on the defendant. The defendant thinks he's dealing at arm's length with another drug dealer, but in fact he's dealing with an informant. The only difference is that here there's a car involved. There's no warrant necessary for either one. No probable cause other than the conduct that results from or the evidence that's found as a result of the encounter, which is a voluntary encounter. I would disagree with that. I think in your typical confidential informant situation, you have two people meeting. And then from that, whatever evidence is gathered from that, then we have the arrest. Here, Miss Miller is not free to leave when the police pull up behind her car. Now, whatever Mr. Jordan's intentions were at that point, this police show of authority, this fact that she cannot leave the situation, distinguishes it from the typical case where you just have two people meeting in a house or a back alley somewhere. So because she is seized from that time, the police needed at that time reasonable suspicion, and the tip simply didn't justify that. Well, I mean, I think maybe the point is the two people decide to have this drug transaction, and one of them just happens to be an informant, and she decides to take a ride. She could have taken a ride maybe with anybody, but Jordan offered her a ride. She puts herself in the situation. But she still is not – she's still seized when the police officers get there. And so, you know, this is – Well, I guess here's the question. Did she ask, I think I'll get out now and walk? She didn't do that, did she? At least we don't have anything in the record that indicates that. Well, the officers say that she's not free to leave. The officers say she was never told that. If you look at the video, Officer Hilby comes to the passenger side and stands right there. I mean clearly no one would legitimately think they have a right to get out and to leave at that point. If you look at the Supreme Court case, I think it's Brenlin v. California, I mean the rationale for why a passenger is seized in any traffic stop, it applies the same way here. And I go back to what I said before. In her eyes, it's a traffic stop. Okay, but if we have – all right, let's go back then. We have a real traffic stop. This we know is not necessarily. But now we have a real traffic stop. The driver is charged with speeding. The officers walk up, and he's got two passengers. The police walk up to the car, and it's been my experience that on a busy road they often will walk to a passenger side because they don't want to get hit, as has happened recently. And when the window opens, they smell marijuana. They get a whiff of something. And now nobody is going anywhere, but it was a speeding case. How is this different? They don't get a whiff, but they have a call from Jordan saying, I just picked up – I'm bringing in a lady. She just picked up some crack cocaine. Well, I think in both situations the passenger ceased. I mean, when there's a traffic stop, everyone in the vehicle has been seized. The question is, at that time, was there a reasonable suspicion to justify the seizure? And the answer here is no because there was no veracity, no corroboration, no prior reliability. And so the totality of the circumstances show it simply doesn't add up to a reasonable suspicion. And unless there are any further questions, turning to the second issue then regarding first offender probation, this issue is frankly quite simple. A judge cannot impose stricter eligibility requirements than the legislature has written into the statute, especially when that's based on the defendant exercising her constitutional right to go to trial. Here, Ms. Miller asked the judge directly, why didn't I get first offender probation? The judge says, quote, the reason I didn't put you on that is there was an ample opportunity previously for some sort of an agreement to be presented with that as a term of it. And then he further explains this at the motion to reconsider sentence hearing saying, this court feels strongly that those kinds of dispositions should be reserved mainly for people that have plea agreements and things of that nature. Part of the thing is that the possibility of those kinds of dispositions leave once there's a trial held. And it really can't be put any plainer than that. The court was not considering this possible sentence because Ms. Miller went to trial. You would agree that the judge can consider her lack of remorse, correct? He can, but sure. Or her continued protestations of innocence. Yes, and I think this is, you know, if this were an excessive sentence argument, then this court would have to look at all the aggravating factors and the mitigating factors and decide if the sentence is justified. But that's not the question here. The question here is, did the court consider all possible sentencing options? And from what I've just read to you, plainly did not. First offender probation or first offender sentencing requires compliance with drops and other things. And didn't she say she wasn't going to do that? Well, she asked for it twice. So, I mean, there's some common sense. But she said she didn't want to do it. I mean, you can ask for it, but that doesn't mean you're going to comply with the conditions. But still, you have to, the judge has to consider this. He was not considering it from the moment she went to trial. And so, you know, maybe he did mention other factors, but that's really not the point here. He arbitrarily denied this form of probation based on his personal policy of not giving it to defendants who went to trial. And, you know, I just point to the fact that, you know, maybe she made some comments in the pre-sentence investigation, but twice, you know, once at sentencing, and then again in the motion to reconsider sentence, she's specifically asking for this form of probation. So I think there would be some evidence of the intent to fulfill that form of probation. And then finally, I guess with respect to task probation, the state argues that this issue has been waived, but waiver really doesn't work in this situation because it's the court's duty to admonish the defendant of this particular sentence. You know, if waiver could apply, it would really make the court's duties superfluous, because in that situation, if the judge didn't admonish the defendant, either one, the defendant, if the defendant did not put it in the motion to reconsider sentence, then according to the state's reasoning, this would be waived, or secondly, if the defendant did put it in the motion to reconsider sentence, there would be really no need for admonishments. Admonishments would be unnecessary because the defendant would already know about this form of probation. So really, again, waiver doesn't seem to apply to this situation. And unless there are any further questions. All right, thank you. You'll have an opportunity for reply. Mr. Schmidt? Good morning, Your Honor, counsel. My name is Matthew Schmidt, and I'm representing the state in this matter. I think Mr. McCoy did a good job of laying out the basis of the issues, so I'll go into the first issue really quickly. Terry stops, which is what this was, are supposed to be based on reasonable suspicion, and reasonable suspicion can arise from tips, both anonymous and non-anonymous, and what we have here is a not-anonymous tip. I don't really agree with the argument that we don't know that Mr. Jordan is still technically anonymous because there was no phone call trace. I mean, is he required to say, I'm Robert Jordan, and this is my Social Security number, or send a picture of himself with a photo ID in today's paper? He gave his name, he gave the make, model, and type of his car, he gave the license plate, and a variety of other information that's easily verifiable. So I don't think that his identity is really in question at this point. And because of that, this Court has said that all you need is a minimum amount of corroboration of the reliability of the information when you have a known source. Let's go back to the question I asked Mr. McCoy. Do we need to have information about the ultimate criminal issue, or do we need to have information that gives some reliability to the fact that this person may have criminal information? What's the most important thing we look at when we look at reliability? Cases differ as to which element. Obviously, it is a totality of the circumstances argument. Some cases have put different emphasis on different things. For example, this Court's case, People v. Smullick, they quoted the U.S. Supreme Court case, Alabama v. White, which said what was important was the caller's ability to predict the respondent's future behavior. And as it turned out, this is exactly what happened. He said, I'm going to be at this intersection at this time going in this direction, which was verified, they saw it, he flashed his lights. So they could tell it's the car with one light on. Correct, Your Honor. So, obviously, the ability to predict future information is right there, which gives him extreme reliability, because they said that knowing those type of details means that you are familiar enough with the person that you are, for lack of a better term, informing on, that you would both know their future schedule, which leads you to believe that you would know if they're engaging in criminal conduct, which he did. He called up and said, I'm coming back with this woman who I just brought to Rockford to buy some crack cocaine, and she has, I think it was $70 worth of crack cocaine and a crack pipe. Here's where we're coming, you know, and all the rest of the information, which heavily goes towards veracity and reliability. He laid out everything, everything he could. I don't think you can just dismiss these things as innocent details, otherwise how are you ever supposed to call in a case where someone is in possession of drugs if they're sitting in the car next to me is not enough? Isn't it one thing to call into the police the fact that my friend here has drugs, when you're inserting yourself into a police encounter, as opposed to this informant, whatever Mr. Jordan or whatever his name was, he's actually calling in something that he himself is going to be a part of. He himself is inserting himself into this police encounter. Doesn't that in some way affect his credibility? I don't think so. Officer Haas testified that he wasn't informing to get a break on any case. There was no monetary compensation involved. He just happened to be the person that was driving her, and that's how he knew that she had drugs in her possession. I think it actually adds to the reliability that he was present physically in the car, took her there, and was driving her back. Very likely that he was calling to get her help. It's entirely possible. And then the judge doesn't give a chance, doesn't even consider it. Well, Your Honor. My purpose of the call was to probably get her help, right? There was some testimony at some point that he was upset with her because he was trying to plan his mother's funeral, and she kept asking for a ride to Rockford to go buy cocaine. But it very well could be that trying to get her help was a part of that. If you'd like, I can go into the task issue now. It's a good transition. Sure. Simply put, the task issue is not waived. The task issue is forfeited. It was forfeited because when you have a sentencing issue, you were required to file a post-sentencing motion and make a contemporaneous objection during the sentencing hearing, which simply did not happen. Courts have recently held that plain error is much more limited than a defendant would like you to believe, that it goes towards a breakdown in the adversarial system and not just these simple trial mistakes like forgetting to mention tasks, which the defendant obviously wasn't very interested in since she asked for probation that didn't involve drug drops. So she could complete it successfully. So it's simply a forfeited issue, and I don't think it rises to the level of being plain error because it's not the type of plain error that courts have contemplated. What about the judge's comments concerning his strong beliefs? His strong beliefs. That's a good way of putting it. Well, first I'd like to differentiate it from people v. Bollier, which is the case the defendant cites, where the judge kind of makes a statement, well, it used to be that everybody had this policy where sex crimes didn't get on probation. A lot of people don't still hold on to that. I do, so nothing for you. I think what we have here is a much more mixed bag. He goes on at first about you didn't take the first step towards rehabilitation, you didn't say you're sorry, you're not admitting you have a problem. In the PSI report she said I was set up, the drugs weren't mine. Oh, but even though the drugs weren't mine, can I still please not have drug drops because I'll fail those? And then she talks about the judge kind of makes a reference towards this crime is enough of a concern that I don't think it's really proper for you to have first offender probation. It's a little bit too serious. And even then at the motion to reconsider, he talks about the attitude of the defendant at the time and he makes this, he says reserved mainly for people that have plea agreements and things of that nature, not reserved entirely, not just reserved for people that have plea agreements, but mainly for people that have plea agreements, which ties into the earlier comments of people that have expressed remorse, people that say, okay, I did this, I have a problem, I need help, which, again, I think the fact that she asked for first offender probation twice is more a sign of a good attorney than any actual desire for help on her part. Well, in many, many cases, a good attorney will convince a defendant that you really do need drug treatment. And when a judge says it's not available to somebody who goes to trial, isn't that, how do you address that? I mean, he essentially said these dispositions leave once there's a trial. I think when you look at the comment in context of everything that he said, both at the sentencing hearing and in the motion to reconsider, I think it was an artful turn of phrase and that there's enough in there to say that the judge was considering largely that she just didn't have any remorse, was still proclaiming her innocence and that the true reason, and I just kind of went off the cuff a little bit. Well, this, you know, when we talk to judges about making a good record, we tell them to make a good record. Yes, ma'am. Judge Bald here has made a very good record of how he feels. And that is inconsistent, I believe, with the concept of discretion. He is not, I mean, he's come to this point. This is what it's for and this is how I'm going to resolve it as opposed to, you know, I don't have to give you first offender probation because you don't seem to understand what the conditions are. What's wrong with that difference? And why didn't he go there? Why did he have to tell us about first, you know, for trial and for people who are, you know, who are remorseful and things of that nature? Obviously, I can't fully speculate into the mind of Judge Bald, but I think what he was going for, it kind of conjoined the two in his mind. The first offender probation is for people that admit they have a problem, that are willing to take drug drops, that would admit their crime and feel some remorse about it, and just kind of focused on the wrong portion of it in that one single solitary sentence instead of elaborating on the other things like didn't take the first step towards rehabilitation, serious crime, just not willing to confront her problems head on. Unless there are any other questions? Thank you. Thank you very much. Thank you, Your Honor. We humbly ask that you determine the trial court's decisions. Mr. McCoy. First, in response to Justice Hutchinson's question regarding what is required to show reliability, the court in Jackson said that information must be provided that's more than just innocent details of the suspect, since reliability as to identification must not be confused with reliability as to the likelihood of criminal activity. So what's corroborated here is only details of identification. There's no details regarding the criminal activity. Well, if that's the case, then the only way that this could have been reliable is if he said, and by the way, the $70 worth of crack cocaine and the pipe are sitting on the dashboard. Now, who's going to carry something like that on a dashboard of a car? Well, I think it's important to remember it's a totality of circumstances test. So it's hard to really draw a bright line what exactly would have been required here. Perhaps if this informant had been used before successfully, perhaps if he'd stated a more concrete basis of knowledge, then these things could have weighed in the factor and then less corroboration would have been required. But when really what we had was essentially an anonymous phone tip, which this court in Nitz held requires a heightened level of corroboration, then more than just these innocent details are required. Well, doesn't the fact, though, that this phone call that he's making and the details that he's giving are going to ensure that he himself is stopped by the police, isn't that a fairly substantial factor weighing in the favor of his reliability? He's guaranteeing his own stop, right? If it is Roger Jordan, but the police officers, when they pulled the car over, simply they don't know that it really is him. I mean, there's no evidence to say that the person who made this phone call is indeed Roger Jordan. And as I said before, it needed to be justified when the seizure occurred. And so later learning that his identity really doesn't help the police attain that reasonable suspicion here. Even if when they stop him, which usually happens, you hear insurance and license, and he produces an insurance card and a license that says Roger Jordan. But the seizures already occurred at that point. But he's given his license number, which presumably checks to him. I actually don't recall that from the brief, but, right? He gave a license plate number. There's no evidence the police officers did anything to corroborate that that, in fact, was his license plate number, that this car he describes belongs to him in any way. And, you know, I mean, it's possible even if it did, I mean, perhaps someone else is following this car and knows Roger Jordan is describing the situation. What about a woman who calls the police and says, I'm with my husband. He's threatened to kill me. I'm driving down the street. You see a car matching that description. The police pull the vehicle over, and it is the woman who made the phone call. And the defendant now, you're representing the husband who's threatened to kill him. He has a knife, and he's about to murder his wife at the destination they're on their way to. We're going to suppress that. Your theory is that that's not corroborated. There's no basis for the stop, even though she's called the police and said, my husband's going to kill me. And there's a car with a man and a woman just like this, except the roles are reversed. It's the same facts. So we're going to suppress that stop? Well, you'd have to look again. It's a totality of the circumstances. Those are the same circumstances. It's just a different crime. Well, I mean, where is she calling? Is she calling 911? Well, then we know it's an identified person. Is she, you know, giving the name? Mr. Jordan identified himself in the call. I know, but there's no way for the police officers to corroborate that that, in fact, was him. Well, how are the police going to corroborate that this woman is who she says she is? She's just given a description of her vehicle just like Mr. Jordan did. What's the difference? If it was called to 911, then there is the presumption that those people know those calls are recorded, and therefore there is a heightened level. What if it's not? I mean, if it's the same phone call, same call. Well, I mean, there's police officers would have to corroborate that information. It's the facts. The case law is what it is. We simply don't just accept tips at their face value. We look to see if they are, in fact, reliable. And you need here, and you need in any case, reliability as to the likelihood of criminal activity. Finally, with regard to first offender probation, the state mentioned People v. Bolliard. In Bolliard, the court did say, comment on the seriousness of the offense, as well as in People v. Wilson, which we cite in our brief. Both those cases, the court comments on the seriousness of the offense, but uses or denies a certain type of sentence based on personal policy. And that's the same thing we have here. The court said the possibility of these kinds of dispositions leave once there's a trial that's held. And so as the legislature has allowed this, both in terms of guilty pleas and the defendants who go to trial, this contravened the will of the legislature. Ms. Miller would request this court's reverse of conviction or alternatively remand for a new sentencing hearing. Thank you. Thank you, counsel, for your arguments today. We will take the matter under advisement. We will issue an opinion in due course. We will stand in recess to prepare for our next case.